## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| INGRID FISHER, *et al.*, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-05-1731 |
| | § | |
| HALLIBURTON, *et al.*, | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| REGINALD LANE, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-06-1971 |
| | § | |
| HALLIBURTON, *et al.*, | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| KEVIN SMITH-IDOL, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-06-1168 |
| | § | |
| HALLIBURTON, *et al.*, | § | |
| *Defendants.* | § | |

### ORDER

Pending before the court is defendants' motion to strike the affidavits of plaintiffs' expert witnesses, David Crump, Colby Vokey, and Ralph C. Nash in their entirety.  Fisher Dkt. 363. Lane Dkt. 188.  Smith-Idol Dkt. 138.  After considering the parties' arguments, the appropriate evidence, and the applicable law, the motion is **GRANTED**.

### I. BACKGROUND

This case arises out of an attack by Iraqi insurgents on civilian contractors driving fuel convoys in Iraq.  The facts have been outlined in several previous orders of the court and do not bear

repeating here.  *See, e.g.*, Fisher Dkt. 168.  Relevant to the present motion, plaintiffs Ingrid Fisher,

Reginald Lane, and Kevin Smith-Idol submitted affidavits by purported experts[1] Ralph C. Nash,

David Crump, and Colby Vokey in connection with plaintiffs' opposition to defendants' motion to

dismiss under Federal Rule of Civil Procedure 12(b)(1) pursuant to the Defense Base Act.

Fisher Dkt. 319.  Lane Dkt. 146.  Smith-Idol Dkt. 105.  All defendants (collectively, "KBR")

responded by filing the present motion to strike the affidavits.  Fisher Dkt. 363.  Lane Dkt. 188.

Smith-Idol Dkt. 138.  KBR claims that the affidavits contain nothing more than legal opinions and

conclusions and, consequently, moves the court to strike all three of the affidavits in their entirety.

In response, plaintiffs claim that the experts present reliable testimony premised upon their

knowledge and experience that would assist the trier of fact in determining fact issues in this case.

Fisher Dkt. 372.  Lane Dkt. 196.  Smith-Idol Dkt. 147.

## II. ANALYSIS

### A.    Admissibility Standard for Expert Testimony

The Supreme Court of the United States acknowledged in *Daubert v. Merrell Dow Pharmaceuticals* that Federal Rule of Evidence 702 serves as the proper standard for determining the admissibility of expert testimony.  *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597–98, 133 S. Ct. 2786 (1993).  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if (1) the testimony is based upon sufficient

---

[1] The court makes no ruling as to the reliability and qualifications of David Crump, Colby Vokey, and Ralph C. Nash to serve as expert witnesses in this case under Federal Rule of Evidence 702 and *Daubert*.  For the limited purposes of this order, however, the court refers to Nash, Crump, and Vokey colloquially as experts.

> facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.  Pursuant to the holding in *Daubert*, trial courts act as "gatekeepers" for the admissibility of expert testimony, making a "preliminary assessment of whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167 (1999); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (5th Cir. 2002).  The "gatekeeper" role exists not only with respect to scientific expert testimony, but also with respect to non-scientific expert testimony.  *Kumho Tire*, 526 U.S. at 147.  Moreover, the *Daubert* Court discussed factors to assess the reliability of expert or opinion testimony: (1) whether the expert's technique or theory can be tested in an objective manner; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has generally been accepted in the scientific community.  *See Daubert*, 509 U.S. at 592–93.

Furthermore, the court has discretion to exclude expert testimony that is unhelpful to the jury under Rule 703:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 703.  Lastly, and relevant to the present motion, the trial court may exclude expert testimony if it usurps the role of the judge or jury by:  (1) proffering legal opinions or conclusions; or (2) drawing conclusions about a defendant's state of mind. *Askanase v. Fatjo*, 130 F.3d 657, 673

(5th Cir. 1997) (holding that expert witnesses may not proffer legal conclusions); *see also Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007) (holding that expert witnesses may not evaluate a party's state of mind).

### B.       Impropriety of Expert Testimony that Proffers Legal Opinions or Conclusions

First, experts cannot assert what law governs an issue or what the applicable law means because that is a function of the court. *Askanase*, 130 F.3d at 673; *see also Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009) ("[A]n expert may never render conclusions of law."); *Estate of Sowell v. United States*, 198 F.3d 169, 171–72 (5th Cir. 1999); *Snap-Drape, Inc. v. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996).  As the Fifth Circuit explained in *Askanase*:  "[T]here is one, but only one, legal answer for every cognizable dispute.  There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge."  *Id.* at 672–73.  Plainly stated, "[an expert's] opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."  *Owen v. Kerr McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

Moreover, an expert may not offer opinions that simply reiterate what "the lawyer can offer in argument."  *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *In re Air Crash at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986) ("[T]he trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument.").  "Expert testimony is an improper mechanism for offering legal arguments to the [c]ourt . . . [because it] would be unfair to [one party] for the [c]ourt to award [the opposing party]'s legal arguments the elevated stamp of expert."  *Sparton Corp. v. U.S.*, 77 Fed. Cl. 1 (2007).

### C.    Impropriety of Expert Testimony Regarding a Defendant's Mental State

Furthermore, a trial court may strike expert testimony that evaluates a party's state of mind, as that evaluation is within the province of the jury.  *See, e.g.*, *Marlin*, 248 F. App'x at 541.  "An expert's credentials do not place him in a better position than the [trier of fact] to draw conclusions about a defendant's state of mind."  *Id.*; *accord CMI-Trading, Inc. v. Quantum Air, Inc.*, 98 F.3d 887, 890 (6th Cir. 1996) ("The intent of the parties is an issue within the competence of the jury and expert opinion testimony will not assist the jury, within the meaning of Federal Rule of Evidence 702, in determining the factual issue of intent."); *Thompson v. State Farm Fire & Casualty Co.*, 34 F.3d 932, 941 (10th Cir. 1994) ("[When] expert testimony is offered on an issue that a jury is capable of assessing for itself, it is plainly within the trial court's discretion to rule that testimony inadmissible because it would not even marginally 'assist the trier of fact.'").

### D.    The Crump and Vokey Affidavits

The court now turns its analysis to the Crump and Vokey affidavits.  Because the contents of the Crump and Vokey affidavits are improper for similar reasons, the court examines them jointly. The Crump affidavit contains the following assertions, for example:

1.    "Peterson and the Defendants had intent and specific intent to cause many people to be placed where some would be killed."  ¶ 3F;

2.    "Evidence shows a specific intent, just as it shows pure intent." ¶ 3B;

3.    "[T]he evidence is overwhelming that Defendants specifically intended the precise tortious act that the plaintiffs allege."  ¶ 10A;

4.    "Purposefulness" is not required to show specific intent.  ¶ 3B;

5.    "[Defendants' standard] simply cannot be the law." ¶ 3D;

6.      "[A] denial of intent coupled with these kind of nonresponsive answers is not indicative of any lack of intent and indeed indicates the presence of intent." ¶ 13; and

7.      "[Peterson's and Richard's] denials of intent are not credible . . . ." ¶ 13.

Similarly, the following excerpts are taken from Vokey affidavit:

1.      "KBR's intent to send its drivers into an area where death or bodily harm was substantially certain . . . satisfies the mens rea required for specific intent and even murder." ¶ 22;

2.      "Based on my knowledge and experience . . . it is my opinion that KBR's decision . . . rises to the level of specific intent." ¶ 20;

3.      "KBR knew that the death or serious injury of its drivers was substantially certain to result from the decision . . . ." ¶ 21;

4.      "KBR's argument that they did not desire to cause the death of their drivers does not eliminate intent." ¶ 20;

5.      "KBR management knew that sending the . . . convoys into the area was substantially certain to cause death or serious bodily injury of these civilians and satisfies the intent requirement." ¶ 23;

6.      "I believe that [KBR's] actions also satisfy the elements required to find negligence." ¶ 24;

7.      "[Peterson's statement about a lack of predictive intelligence] is disingenuous at best." ¶ 25;

8.      "[KBR] would face no legal ramifications [under the LOGCAP III contract] had KBR managers presented convoys from traveling on 9 April 2004." ¶ 28; and

9.      "[T]he evidence strongly suggests that KBR management wanted to maximize its performance under the contract in order to maximize its profits." ¶ 31.

Upon examination, both the Crump and Vokey affidavits contain multiple legal conclusions,

evaluations of the mental state of the defendants' employees, and evaluations of the credibility of

the testimony of KBR's employees, all of which are impermissible expert testimony.  The primary consideration under Rule 702 is whether the expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *See Daubert*, 509 U.S. at 592–93 (quoting FED. R. EVID. 702).  Accordingly, pursuant to Rule 702, the court concludes that neither the Crump nor Vokey affidavit would not be helpful to a trier of fact, as the affidavits usurp the role of both the judge and the jury.  *See Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009) (finding that experts may not render conclusions of law); *see also Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007) (concluding that an expert's evaluation of a defendants' mental state are not helpful to the finder of fact).  Consequently, KBR's motion to strike is **GRANTED** with respect to the Crump and Vokey affidavits.

### E.   The Nash Affidavit

Finally, the court turns its attention to the Nash affidavit, in which Nash analyzes the legal effect of provisions in the LOGCAP contract, the Task Orders, the Statements of Work (SOW), and the Federal Acquisition Regulations.  Federal courts have allowed experts to testify regarding the meaning of contract terms when the meaning depends on trade practice.  *Kona Tech. Corp v. S. Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 279–80 (5th Cir. 1987); *see also Sparton Corp.*, 77 Fed. Cl. 1, 8.  However, "[i]n the absence of specialized trade usage, expert testimony regarding proper contract interpretation is inadmissible, as is expert testimony regarding the legal significance of the contract language." *Sparton Corp.*, 7 Fed. Cl. 1, 8 (citing *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 549–550 (6th Cir. 1981); *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509–10 (2d Cir. 1977); *Loeb v. Hammond*, 407 F.2d

779, 781 (7th Cir. 1969)).  Thus, the proper inquiry is whether Nash's interpretation of the relevant

contracts is limited solely to issues involving specialized trade usage.

     The Nash affidavit contains the following excerpts:

1. "The contract makes it clear that KBR is not an agent of the Army but rather is an independent contractor." ¶ 4;

2. "KBR is in sole control of its civilian employees . . . and the Army cannot order KBR civilian employees and workers to perform work . . . .; ¶ 4;

3. "[T]he SOW . . . made KBR solely responsible for the safety of its civilian employees and workers under its control." ¶ 5;

4. "In addition, the SOW . . . made KBR solely responsible for the safety of its employees . . . ."  ¶ 5;

5. "[T]he clear language of the contract clearly requires KBR to make the determination as to whether the Army will or is able to meet its contractual responsibilities of providing adequate force . . . ."  ¶ 6;

6. "It necessarily follows that in any instance where KBR knew and/or concluded that the route or area to which the delivery drivers or convoys were dispatched was unsafe . . . KBR had the contractual right to refuse to assign its personnel to make deliveries . . . ."; ¶ 6;

7. "KBR employees correctly interpreted these contract provisions . . . in stating that only KBR management had the authority to halt or not dispatch delivery convoys." ¶ 7; and

8. "Any uninvolved reader of the award fee decision on March 4, 2005 would find it exceedingly difficult to explain the award of 90% of the available award amount based on the detailed analysis in the text of the report . . . ." ¶ 13.

Upon examining the affidavit in full, the excerpts above demonstrate that Nash's contract

interpretations stray far beyond the permissible bounds of specialized trade usage.  Nash's testimony,

therefore, is improper in that it evaluates the legal effect of contract provisions and invades upon the

province of the court and the jury. *See, e.g.*, *Estate of Sowell v. U.S.*, 198 F.3d 169, 171–72 (5th Cir. 1999).

In addition, the circumstances surrounding this motion bear close resemblance to those in *Sparton Corp. v. United States*, in which the United States Court of Federal Claims excluded similar expert testimony by Nash. *Sparton Corp.*, 77 Fed. Cl. 1 (2007). The *Sparton* court first acknowledged that "[g]overnment contract experts have been allowed to testify in federal courts regarding the meaning of contract terms when the meaning depends on trade practice." *Id.* at 8 (citations omitted). After considering Nash's expert report, however, the court found that "Professor Nash's testimony [served] the sole purpose of advising the Court on how to interpret the [contract] and the contract provisions . . . ." *Id.* Consequently, the court struck Nash's testimony, concluding that "[s]uch legal conclusions are the province of the Court, [and] . . . [e]xpert testimony is an improper mechanism for offering legal arguments to the Court." *Id.* at 8.

Upon reviewing the excerpts listed above, the court finds that the Nash affidavit similarly attempts to instruct the court on how to interpret the contract. Rather than limiting the scope of his interpretations of the contracts to narrow subject of customary trade usage, Nash instead makes multiple legal arguments and conclusions in the guise of expert testimony. Thus, the court finds it proper to exclude the Nash affidavit in its entirety. Accordingly, KBR's motion to strike is **GRANTED** with respect to the Nash affidavit.

### III. CONCLUSION

Upon examination, the court finds that each of the three affidavits contains numerous conclusions that invade on the province of either the court or the jury.  Therefore, the court invokes its role as "gatekeeper" to exclude the three affidavits in order to protect its proper role as the "only spokesman of the law," and to protect the jury from confusion with regard to factual determinations that are solely within its province.  Thus, KBR's motion to strike the affidavits of David Crump, Colby Vokey, and Ralph C. Nash in their entirety is **GRANTED**.

It is so ORDERED.

Signed at Houston, Texas on December 21, 2009.

_____
Gray H. Miller
United States District Judge

10